John M. Toriello
Patrick J. Sweeney
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
Telephone (212) 513-3200
Facsimile (212) 385-9010

*Counsel to U.S. Bank National Association,*
*as Trustee of the Lehman Brothers Small Balance*
*Commercial Mortgage Pass-Through Certificates, 2007-1*

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 1 0 2009 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE OF THE LEHMAN BROTHERS SMALL
BALANCE COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES, 2007-1

               Plaintiff,

v.

DR. KENNETH CRUTCH, THE CITY OF NEW
YORK PARKING VIOLATION BUREAU and JOHN
DOE Nos. 1-100

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No.

**09   0998**

**COMPLAINT**

**BLOCK, J.**

Plaintiff U.S. Bank National Association, as Trustee of the Lehman Brothers Small

Balance Commercial Mortgage Pass-Through Certificates, 2007-1 ("U.S. Bank" or "Lender"), by

and through its attorneys, Holland & Knight LLP, for its complaint against defendants Dr.

Kenneth Crutch ("Crutch"), the City of New York Parking Violation Bureau (the "City of New

York"), and John Doe Nos. 1-100 (collectively "Defendants"), respectfully alleges upon

information and belief as follows:

## NATURE OF ACTION

1.      This is an action brought pursuant to New York Real Property Actions and Proceedings Law, Section 1301 et seq., to foreclose on a mortgage encumbering the Property commonly known as 199-24 Linden Boulevard, Jamaica, New York 11412, consisting of a certain plot, piece or parcels situated in the City of New York, County of Queens, State of New York, and designated as Section 4, Block 12620, Lot 9 on the Land-Tax Map of the County of Queens (collectively, the "Mortgaged Property"). A legal description of the Mortgaged Property by metes and bounds is attached hereto as Exhibit A.

## PARTIES

2.      U.S. Bank is a national banking association whose main office is in Ohio. U.S. Bank, as trustee, represents the owner and holder of an Adjustable Rate Mortgage Note and Mortgage (as such terms are defined in paragraph 10 of this Complaint), the lien of which encumbers the Mortgaged Property as a first mortgage, together with the improvements located thereon.

3.      Upon information and belief, defendant Dr. Kenneth Crutch resides at 3309 Harbor Point Road, Baldwin, New York 11510. Dr. Kenneth Crutch is made a defendant to this action because: (a) he was at all times pertinent hereto, and still is, the titled and recorded owner of the Mortgaged Property; and (b) he is the Mortgagor under the Mortgage.

4.      Upon information and belief, the City of New York Parking Violation Bureau is an agency of the City of New York who is made a party defendant herein by reason that there is, or may be, an unsatisfied judgment, debt, security interest, or other claim against Defendant Dr. Crutch in its favor that may be a lien on the Mortgaged Property, or any portion thereof, which Claim is subject to and subordinate to the liens of U.S. Bank.

5.      Upon information and belief, the Doe Defendants are persons, parties, corporations or other entities, if any, who are presently unknown to plaintiff, holding or claiming to hold certain leaseholds, tenancies, subtenancies, possessory or other interests, including partnership interests, in and to any judgment or liens upon the Mortgaged Property, or any portion thereof.

6.      Upon information and belief, each of the aforementioned Defendants either has obligations with respect to or arising out of the Loan or claims to have, may claim to have or may have some right, title or interest in or lien upon the Mortgaged Property, which right, title, interest or lien, if any, is subject to and subordinate to the liens of the Lender.

## JURISDICTION AND VENUE

7.      This action is between citizens of different states. The amount in controversy, exclusive of interest and costs, exceeds $75,000. Therefore, jurisdiction is proper pursuant to 28 U.S.C. § 1332.

8.      Venue is based on 28 U.S.C. § 1391. A substantial part if the events giving rise to this action took place within the jurisdiction of this Court.

## THE LOAN AND MORTGAGE

9.      On or about November 16, 2006, Greenpoint Mortgage Funding, Inc. ("Greenpoint") made a loan to Dr. Kenneth Crutch, 3309 Harbor Point Road, Baldwin, New York 11510 ("Dr. Crutch"), in the principal amount of $600,000.00 (the "Loan").

10.     To evidence and secure the Loan, Dr. Crutch duly executed and delivered to Greenpoint Mortgage: (i) a certain Adjustable Rate Mortgage Note, dated November 16, 2006, made by Dr. Kenneth Crutch in favor of Greenpoint (the "Note"); and (ii) a certain Mortgage, dated November 16, 2006, made by Dr. Kenneth Crutch in favor of Greenpoint in the original

principal amount of $600,000.00. (the "Mortgage"). As further security for the payment of the Loan, the Mortgage, at paragraph 23, also includes an express assignment of all Rents collected and received from the Mortgaged Property. (the "Assignment of Leases and Rents"). A copy of the Note and a copy of the Mortgage are attached hereto as Exhibits B and C, respectively. The Note and the Mortgage are referred to collectively as the "Loan Documents."

11. Subsequently, Greenpoint assigned all rights under the Mortgage and Note to Lehman Brothers Bank, FSB. A copy of the Assignment of Mortgage, dated January 18, 2007, and a copy of the Assignment of Assignment of Leases and Rents, dated January 17, 2007, are attached hereto as exhibits D and E, respectively.

12. In turn, Lehman Brothers Bank, FSB assigned all rights under the Mortgage to Plaintiff U.S. Bank. A copy of the Assignment of Mortgage, dated October 24, 2008, and a copy of the Assignment of Assignment of Leases and Rents, dated October 24, 2008, are attached hereto as exhibits F and G, respectively.

## MORTGAGE RECORDING TAX

13. All taxes imposed by law upon the recordings of each and all of the mortgages or instruments discussed above were duly paid.

## TERMS OF THE LOAN DOCUMENTS

### *Provisions of the Note*

14. Pursuant to the Note, Dr. Crutch promised to pay $600,000.00 (the "Principal Sum"), plus interest, to the order of Lender.

15. Pursuant to Section (i), of the Note, Dr. Crutch agreed to pay interest to Lender on that part of the principal that had not been paid at a rate of 7.750% as an initial interest rate, which rate would change at fixed intervals over the life of the loan.

4

16. Pursuant to Section (ii)(A) of the Note, Dr. Crutch agreed to pay Lender twelve monthly installments of accrued interest with payment commencing on January 1, 2007 and continuing until the he has paid all of the Principal Sum, interest and any other charges due and owing under the Note.

17. Pursuant to Paragraph 4, the Note secured by the Mortgage and by an assignment of "any and all leases affecting the Premises or any part thereof."

18. Pursuant to Paragraph 5, "[t]he whole of the Principal Sum or any part thereof, and any other sums of money secured by the Mortgage shall, forthwith or thereafter, at the option of the Lender, become due and payable if default be made in any payment under this Note, or upon the happening of any default which, by the terms of the Mortgage or any other instrument, document or agreement now or hereafter given to secure this Note (the Mortgage and all such other instruments, documents and agreements, being collectively, the 'Loan Documents'), including any grace period set forth therein, shall be due and payable; and all of the covenants, agreements, terms and conditions of the Loan Documents are hereby incorporated in this Note with the same force and effect as if herein set forth at length."

*Provisions of the Mortgage*

19. The Mortgage provides that it was made by Dr. Crutch for the purpose of "securing the payment of the Debt, and the performance of the Mortgagor of the terms, covenants and conditions contained herein, in the Note and in any other documents and agreements given to secure payment of the Note according to the true intent and meaning thereof ..."

20. The Mortgage further provides that Dr. Crutch "will pay the Debt as provided in the Note."

5

21.     The Mortgage further provides that "rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee as further security for the payment of the Debt .... Mortgagor shall have a license to collect and receive the rents until default hereunder, but such license of the Mortgagor may be revoked by the Mortgagee upon any such default."

22.     The Mortgage further provides that, at the option of the Mortgagee, the Debt shall become due upon the occurrence of any one of several events of default which include, but are not limited to, the following:

> a.     "after default in the payment of any installment of principal or interest as provided in the Note."
>
> b.     "after default in payment and reimbursement of the Mortgagee, after demand for any costs, expenses, and fees incurred by the Mortgagee in curing any default or failure of the Mortgagor under this Mortgage."
>
> c.     "upon the failure of the Mortgagor to perform or comply with any other covenant, agreement or condition of this Mortgage, the Note or any other agreement between the Mortgagor and the Mortgagee in accordance with the terms hereof and thereof."

23.     As one of the several distinct and cumulative remedies expressly provided under the Mortgage, in any action to foreclose the Mortgage, the Mortgagee shall be entitled to the appointment of a receiver.

24.     Further, Dr. Crutch consented to the jurisdiction of the courts of the State of New York for the purpose of any action, suit or proceeding arising out of or in connection with the Note or the Mortgage.

## BORROWER'S DEFAULTS

25.     Defendant Dr. Kenneth Crutch failed to comply with the terms and provisions of the Note, including but not limited to failing and omitting to pay numerous payments owing on the Note.

26.     By letter dated September 11, 2008 (the "September 11[th] Letter"), the Lender notified Dr. Crutch: (i) that he was in default under the terms of the Note; and (ii) that Lender was electing to declare the entire balance of indebtedness to be due and payable which, with outstanding interest, late charges and recoupment fees, but not including attorneys fees, totaled in the aggregate $627,841.68 (the "Payoff Amount"). The Notice further provided Dr. Crutch with an opportunity to cure by making a payment of $15,443.98 by September 21, 2008. A copy of the September 11th letter is attached hereto as Exhibit H.

27.     Despite the Lender's demand and opportunity to cure, Dr. Crutch has failed to rectify his defaults under the Note.

28.     Due to the above-described defaults by Dr. Crutch, he is indebted to Lender pursuant to the terms of the Loan Documents for:

> a.  The unpaid principal amounts under the Loan Documents, all accrued and unpaid interest, and all late charges, which sums, as of March 5, 2009, amount to $642,258.43 in unpaid principal, interest and/or late charges;
>
> b.  Attorneys' fees, and other costs and disbursements, which sums, as of March 5, 2009, amount to $ 18,711.69 and which will further accrue until the amount due and payable under the Loan Documents is paid in full; and

7

c. Any and all additional fees that are due or may become due and payable as provided under the terms and conditions of the Loan Documents until the amount due and payable under the Loan Documents is paid in full.

29. No other action has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage, or recovery of the amounts due under the Note, or any part thereof.

30. Lender requests that in the event that this action will proceed to judgment of foreclosure and sale, said premises should be sold subject to the following:

a. Any state of facts that an inspection of the Mortgaged Property would disclose;

b. Any state of facts that an accurate survey of the Mortgaged Property would show;

c. Covenants, restrictions, easements and public utility agreements of record, if any;

d. Building and zoning ordinances of the municipality in which the Mortgaged Property is located and possible violations of same;

e. Any equity of redemption of the United States of America to redeem the Mortgaged Property within 120 days from date of sale;

f. Any outstanding property taxes and water/sewage fees owing on the Mortgaged Property; and

g. Prior lien(s) of record on the Mortgaged Property, if any.

31. Pursuant to the terms of the Note, Dr. Crutch is liable for the entire indebtedness and, as such, Dr. Crutch will remain personally liable for any debt remaining unsatisfied after a

8

sale of the Mortgaged Property and the application of the proceeds pursuant to the directions contained in such judgment.

32. Lender will not be deemed to have waived, altered or released the defaults mentioned herein or changed the election to foreclose on the Mortgage by reason of receipt of any payment after the commencement of this action, and such election shall continue and remain effective.

33. Upon information and belief, Lender will be required during the pendency of this action to protect the security of the Mortgage by making advances to the receiver of taxes, or to the fire insurance company, which advances are to be included in the balance due to Lender, plus interest, as provided for in the Mortgage foreclosed and deemed further secured thereby.

\* \* \* \*

WHEREFORE, U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates 2007-1, respectfully requests that the Court enter judgment against Defendants and in favor of it, adjudging and decreeing as follows:

1. That judgment be entered in favor of U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates 2007-1, and against defendant Dr. Kenneth Crutch and that the Mortgage be foreclosed;

2. That Defendant, and all persons or entities claiming by, through or under him, subsequent to the commencement of the instant action, and every other person or entity whose right, title or interest in conveyance of or encumbrance upon the Mortgaged Property was acquired subsequent or subsequently recorded thereto, be barred and forever foreclosed of any and all right, claim, lien, interest or equity of redemption of, in and to the Mortgaged Property;

3. That the Mortgaged Property may be decreed to be sold, according to law, subject to the terms set forth in Paragraph 29 of this Complaint;

4. That the monies arising from the sale of the Mortgaged Property be brought into Court;

5. That U.S. Bank be paid by Defendant Dr. Crutch:

   a. The amounts remaining due under the Loan Documents with interest to the time of such payments;

   b. Any other amounts which during the pendency of this action may be paid by U.S. Bank pursuant to any term or provision of the Loan Documents, or in order to protect, preserve or maintain the security for its liens, including, without limitation, taxes, water rates and sewer rents, insurance premiums and all other charges and liens upon the aforesaid Mortgaged Property, together with interest thereon computed from the dates of the respective payments and advances thereof as provided in the Loan Documents; and

   c. The costs and disbursements of this action and the sale including reasonable attorneys' fees, together with interest thereon;

6. That upon U.S. Bank's application therefor, this Court appoint a receiver of the rents and profits of the Mortgaged Property during the pendency of this action with the usual powers and duties, as expressly provided for in the Loan Documents;

7. That Defendant Dr. Crutch may be adjudged to pay the whole residue, or so much thereof as this Court may deem to be just and equitable, of the debt remaining unsatisfied after a sale of the Mortgaged Property and the application of the proceeds pursuant to the directions contained in such judgment; and

8.   That the Court award such other and further relief as is just, proper or equitable in the circumstances.

Dated: New York, New York
       March 10, 2009

HOLLAND & KNIGHT LLP

By: _John M. Toriello_
    John M. Toriello
    Patrick J. Sweeney

195 Broadway
New York, New York  10007
(212) 513-3200

*Attorneys for Plaintiff*
*U.S. Bank National Association, as Trustee*
*of the Lehman Brothers Small Balance*
*Commercial Mortgage Pass-Through*
*Certificates 2007-1*

# 5866294_v3

# EXHIBIT A
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100 Civil Action No.*

## SCHEDULE A

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as "Map of 335 lots belonging to St. Albans Improvement Co., situated in the 4th Ward of the Borough of Queens, N.Y.C., surveyed by Fred L. Bartlett C.E. & C.S., August 1905", and filed in the Queens County Clerk's (now Register's Office) on 2/7/06 as and by part of lots 1 and 2 in Block 3, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Linden Boulevard, as widened, with the westerly side of 200th Street;

RUNNING THENCE: southerly along the westerly side of 200th Street, 84.87 feet;

THENCE: westerly parallel with Linden Boulevard, 40 feet;

THENCE: northerly parallel with 200th Street, 84.87 feet to the southerly side of Linden Boulevard;

THENCE: easterly along the southerly side of Linden Boulevard, 40 feet to the point or place of BEGINNING.

# EXHIBIT B
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100 Civil Action No.*

## ADJUSTABLE RATE
## MORTGAGE NOTE

$600,000.00          Garden City, New York          November 16, 2006

FOR VALUE RECEIVED, DR. KENNETH CRUTCH, residing at 3309 Harbor Point Road, Baldwin, New York 11510, the ``Maker''), and GREENPOINT MORTGAGE FUNDING, INC., (the "Lender"), a corporation organized and existing under and by virtue of the laws of the State of New York, in immediately available funds and in lawful money of the United States, at GreenPoint Mortgage Funding, Inc., P. O. Box 1093, Branford, CT 06405-8093, or such other place as the holder hereof may from time to time designate in writing, the sum of SIX HUNDRED THOUSAND and 00/100 DOLLARS ($600,000.00), which as now exists or may hereafter be reduced is referred to below as the "Principal Sum" or the "Loan", together with interest thereon as hereinafter provided for, as follows:

## (i) INTEREST

Interest will be charged on the Principal Sum until the full amount of the Principal Sum has been paid. Maker will pay interest at a yearly rate of 7.750%, the initial Interest Rate. The interest rate Maker will pay will change in accordance with Section (iii) of this Note.

## (ii) PAYMENTS

### (A) Time and Place of Payments

If this Note is signed on any day other than the first day of the month, Maker will make a payment upon signing for interest only to the last day of the month ("Short Term Interest"). Maker will make monthly payments of principal and interest on the first day of each month beginning on JANUARY 1, 2007. Maker will make these payments every month until Maker has paid all of the Principal Sum, interest and any other charges that Maker may owe under this Note. If, on DECEMBER 1, 2036, (the "Stated Maturity Date"), or on such earlier date, upon acceleration, in the event of a default hereunder or otherwise, Maker still owes amounts under this Note, Maker will pay those amounts in full on that date. All payments will be applied first to interest and then to principal.

Maker will make its monthly payments at GreenPoint Mortgage Funding Inc., P.O. Box 1093, Branford, CT 06405-8093 , or at any different place designated by the Lender.

### (B) Amounts of Initial Monthly Payments

- 1 -

Each of Maker's initial monthly payments of principal and interest will be in the amount of $4,298.47. This amount may change.

(C)   Monthly Payment Changes

Changes in Maker's monthly payments will reflect changes in the unpaid principal of Maker's Loan and in the interest rate that Maker must pay. The Lender will determine Maker's new interest rate and the changed amount of the monthly payment in accordance with Section (iii) of this Note.

(iii)   **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)   Change Dates

The interest rate Maker will pay may change on the first day of DECEMBER 1, 2011, and on that day every 60th month thereafter. Each date on which the interest rate could change is called a "Change Date."

(B)   The Index

Beginning with the first Change Date, the interest rate will be based on an Index. The "Index" is the weekly average yield on U.S. Treasury Securities adjusted to a constant maturity of FIVE (5) years, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index no longer is available, the Lender will choose a new index which is based upon comparable information.

(C)   Calculation of Changes
Before each Change Date, the Lender will calculate the new interest rate by adding  TWO and THREE QUARTER  percentage points (2.750%), to the Current Index.

The Lender will then round the result of this addition up to the nearest whole eighth (1/8) of one (1) percentage point. This rounded amount will be the new interest rate until the next Change Date.

The Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal Sum that Maker is expected to owe at the Change Date in full on the Stated Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of Maker's monthly payment.

- 2 -

(D)  Limits on Interest Rate Changes

Notwithstanding anything to the contrary contained herein, the interest rate that Maker is required to pay at the first Change Date will not be greater than  12.750% nor less than   2.750%. Thereafter, and subject to the maximum rate and minimum rate as such terms are hereinafter defined, the interest rate will never be increased or decreased on any single Change Date by more than Two percentage points (2.00%) from the rate of interest that Maker has been paying for the preceding  60 months.  The interest rate will never be greater than  12.750% (``Maximum Rate''), nor less than 2.750% (``Minimum Rate'') provided that if the Initial Interest Rate is less than the Minimum Rate, the interest rate will not decrease below the Minimum Rate after the interest rate has reached or exceeded the Minimum Rate by regular adjustments.


(E)  Effective Date of Changes

The new interest rate will become effective on each Change Date.   Maker will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again.

With the exception of Short Term Interest, all interest on the Loan shall be calculated on a factor based on a 360 day year and a thirty (30)-day month and will be applied to the outstanding principal balance, provided that any monthly payment of principal and interest that is received before its due date shall not be credited until its due date and any full or partial prepayment, if permitted, shall not be applied until the first day of the next month following the month of payment and Maker shall not receive interest on any funds while being held by Lender prior to crediting same nor shall Maker be entitled to any interest on the amount prepaid.   Short Term Interest shall be calculated on a factor based on the actual number of days elapsed divided by 365.

Maker shall have the right to prepay the Loan as follows:

See attached Prepayment Rider.


All  sums  payable  pursuant  to  the  immediately  preceding subparagraphs shall also be due and payable by Maker upon demand in the event of any involuntary prepayments or any acceleration of the Loan.   In addition, if the Stated Maturity Date occurs as a result of a default by Maker under any the Note or any of the Loan Documents (as defined below) and Maker tenders payment of the Loan or any part thereof to the Lender, such tender shall constitute an evasion of the prepayment provisions and shall be deemed to be a

- 3 -

voluntary prepayment which shall require the payment by Maker of a penalty to be imposed by Lender.

If any payment of principal or interest becomes due on a day on which Lenders in the City and State of New York are required or permitted by law to remain closed, such payment shall be made on the next succeeding Business Day. Any such extension of time shall be included in computing interest in connection with such payment.

> AND THE MAKER FURTHER HEREBY EXPRESSLY AGREES
> WITH THE Lender AS FOLLOWS:

1.    In the event that any payment shall become overdue for a period of TEN      (10) days, a late charge of   FIVE  percent (5%) of the total monthly payment of principal, interest and escrow so overdue may be charged by the Lender for the purpose of defraying the expense incident to handling such delinquent payment.

2.    Lender may charge and Maker agrees to pay reasonable fees and costs for the services of Lender and its agents in processing any ownership transfer on its records, fire loss payments, checks returned dishonored or unpaid, substitution of obligors, releases, modifications, extensions, consents, special agreements, assignments, reduction certificates and certificates of mortgage.

3.    Any interest due under this Note which shall be outstanding more than      TEN   (10) days beyond the due date thereof, or any unpaid charges due or any advances made by Lender out of its own funds for charges or taxes and any unpaid interest charges thereon from an earlier month shall bear interest at the interest rate provided in the Note until paid or up to and including judgment of foreclosure. Nothing in this paragraph shall operate or be construed to prevent Lender from exercising its default rights under the Mortgage. This paragraph shall not be effective if the principal balance of this loan on the date of this instrument is less than $250,000.00 or if the property securing this mortgage is a 1-2 family owner-occupied house.

4.    This Note is secured by, inter alia, a mortgage made by the Maker to the Lender of even date herewith, on real property (the "Premises") known as       199-24 LINDEN BLVD., JAMAICA, NEW YORK  11412,    and more particularly described in said mortgage (the "Mortgage") and by an assignment by the Maker to the Lender of any and all leases affecting the Premises or any part thereof.

5.    The whole of the Principal Sum or any part thereof, and of any other sums of money secured by the Mortgage shall, forthwith or thereafter, at the option of the Lender, become due and payable if default be made in any payment under this Note, or upon the happening of any default which, by the terms of the Mortgage or any other instrument, document or agreement now or hereafter given to

- 4 -

secure this Note (the Mortgage and all such other instruments, documents and agreements, being collectively, the "Loan Documents"), including any grace period set forth therein, shall entitle the Lender to declare the same, or any part thereof, to be due and payable; and all of the covenants, agreements, terms and conditions of the Loan Documents are hereby incorporated in this Note with the same force and effect as if herein set forth at length.

6.    If more than one person joins in the execution of this Note, the obligation shall be joint and several and the relative words herein shall be read as if written in the plural or if any be of the feminine sex, in the feminine gender, as the case may be.

7.    Presentment for payment, notice of dishonor, protest, and notice of protest are hereby waived by the Maker and by each endorser and guarantor of this Note.

8.    Any check, draft, money order or other instrument given in payment of all or any portion of this Note may be accepted by the Lender and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Lender, except to the extent actual cash proceeds of such instruments are unconditionally received by the Lender and applied to the indebtedness in the manner provided in this Note.

9.    This Note may not be changed or modified orally, but only by an instrument in writing signed by the party against whom such change or modification is sought to be enforced.

10.   After any stated or accelerated maturity hereof, the Loan shall bear interest, payable on demand, at the default rate (the "Default Rate") set forth in the mortgage of even date herewith given by Maker to the Lender, but in no event more than the highest rate permitted by the applicable usury law in respect of the Maker, until the unpaid balance of principal and interest shall have been paid in full.  Notwithstanding anything to the contrary contained herein, in the event of a default by the Maker under the mortgage of this Note, the Lender shall be entitled to interest at the Default Rate from the time of said default to the sale of the Premises following foreclosure and on any deficiency judgment and from the Stated Maturity Date of this Note.

This paragraph does not create any right on Borrower's part to pay interest at the rate designated by Lender for the period following stated or accelerated maturity instead of making payment in full.

The Lender or any subsequent holder of this Note shall also be entitled to receive interest at the highest rate allowed by law on any claim filed by it pursuant to the United States Bankruptcy

- 5 -

Code, as amended, to recover all or part of the amounts that may be due under this Note.

11. In the event that this Note is placed in the hands of an attorney for collection by reason of any default hereunder, or if a foreclosure action is commenced or if Lender is required to defend its rights hereunder or under the Mortgage or any documents executed in connection herewith, the Maker agrees to pay the Lender's reasonable attorneys' fees and expenses and all court costs of such actions and foreclosure actions.

12. This Note is and shall be deemed to have been made and delivered in the State of New York and in all respects shall be governed and construed in accordance with the laws of that State.

13. The Maker and any and all guarantors of this Note hereby irrevocably and unconditionally:

(a) consent to the jurisdiction of the courts of the State of New York in any actions, suits, or proceedings arising out of or in connection with this Note (although this covenant shall not preclude an action on this Note by the Lender in any other appropriate jurisdiction);

(b) waive any objection which the Maker may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with this Note or the Loan Documents brought in any of the aforesaid courts;

(c) waive the right to plead or claim that any such action suit, or proceeding brought in any such court has been brought in an inconvenient forum; and

(d) waive the requirements of personal service in connection with any actions, suits, or proceedings arising out of or in connection with this Note or any of the Loan Documents, and consent that all service of process may be made by certified mail, return receipt requested, addressed to the Maker at the address of the Maker set forth below, or at such address, for the Maker, as the Maker shall give to the Lender by written notice sent by certified mail, return receipt requested. Service so being deemed completed two (2) days after the same has been posted as aforesaid; and

(e) waive the right, in litigation in which it and the Lender are adverse parties, to trial by jury and the right to assert any set-off or counterclaim of any nature or description.

14. The word "Maker" shall include the Maker's representatives, successors and assigns and the word "Lender" shall include the Lender's representatives, successors and assigns.

15. All notices or other communications required to be given pursuant to this Note shall be in writing and be given in the manner set forth in that certain Mortgage of even date herewith between the Maker and the Lender.

16. The provisions of this Note are severable. If any clause or provision shall be held invalid or unenforceable, in whole or in part, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, and shall not in any manner affect any other clause or provision in this Note.

17. No modification or waiver of or with respect to any provision of this Note, or consent by the Lender to any departure by the Maker from any of the terms or conditions hereof, shall, in any event, be effective unless it shall be in writing and executed by the Lender. Such waiver or consent shall, in any event, be effective only in the specific instance and for the purpose for which it was given. No notice to or demand on the Maker in any case shall, of itself, entitle the Maker to any other or further notice or demand in similar or other circumstances.

18. No failure or delay by the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any such right, power or privilege.

19. Each and every right granted to the Lender under this Note, and under all other agreements, documents or instruments executed by the Maker and delivered pursuant to or in connection with this Note which evidence or secure the indebtedness described herein or any other obligation of the Maker to the Lender arising as set forth therein, shall be cumulative and may be exercised by the Lender from time to time.

20. This Note, the Loan Documents and all other agreements, documents and instruments executed by the Maker and delivered pursuant to or in connection with this Note which evidence or secure the indebtedness described herein or any other obligation of the Maker to the Lender arising as set forth therein, contain the entire agreement between the Maker and the Lender relating to the subject matter hereof and thereof. The Maker expressly acknowledges that the Lender has not made and the Maker is not relying on any oral representations, agreements or commitments of the Lender or any officer, employee, agent or representative thereof.

## PREPAYMENT RIDER

Maker shall have the right to prepay the Loan as follows:

(a) For the period beginning on the date of this Note until (and excluding) the first anniversary of the date of this Note, full prepayment is permitted provided the Maker pays to the Bank together with the prepayment a sum equal to five (5%) percent of the amount of such payment.

(b) For the period from and including the first anniversary of the date of this Note until (and excluding) the second anniversary of the date of this Note, full prepayment is permitted provided the Maker pays to the Bank together with the prepayment a sum equal to four (4%) percent of the amount of such payment.

(c) For the period from and including the second anniversary of the date of this Note until (and excluding) the third anniversary of the date of this Note, full prepayment is permitted provided the Maker pays to the Bank together with the prepayment a sum equal to three (3%) percent of the amount of such payment.

(d) For the period from and including the third anniversary of the date of this Note until (and excluding) the fourth anniversary of the date of this Note, full prepayment is permitted provided the Maker pays to the Bank together with the prepayment a sum equal to two (2%) percent of the amount of such payment.

'(e) For the period from and including the fourth anniversary of the date of this Note until (and excluding) the fifth anniversary of the date of this Note, full prepayment is permitted provided the Maker pays to the Bank together with the prepayment a sum equal to one (1%) percent of the amount of such payment.

(f) For the period from and including the fifth anniversary of the date of this Note and at all times thereafter, prepayment is permitted without penalty.

All sums payable pursuant to the provisions set forth in the Rider shall also be due and payable by Maker upon demand in the event of any involuntary prepayments or any acceleration of the Loan. In addition, if the Maturity Date occurs as a result of a default by Maker under the Note or any of the Loan Documents (as defined in the Note) and Maker tenders payment of the Loan or any part thereof to the Bank, such tender shall constitute an evasion of the prepayment provisions and shall be deemed to be a voluntary prepayment which shall require the payment by Maker of a penalty to be imposed by Bank.

Notwithstanding anything to the contrary contained herein, the Maker shall have the option, without premium or penalty, to make partial prepayments on the Note in any 12 month period which in the aggregate do not exceed ten (10%) percent of the original principal balance of the Note. Any such partial prepayments shall be applied in the inverse order of maturity.

IN THE PRESENCE OF:

Dr. KENNETH CRUTCH

IN PRESENCE OF:

_Dr. KENNETH CRUTCH_

STATE OF NEW YORK
COUNTY OF NASSAU :

On the    16th day of    NOVEMBER,   2006,   before me, the
undersigned, a Notary Public in and   for said State, personally
appeared       KENNETH CRUTCH             known or proved to me on
the basis of satisfactory evidence to be the individual(s) whose
name(s)   is(are)   subscribed   to   the   within   instrument   and
acknowledged   to   me   that   he/she/they   executed   the   same   in
his/her/their   capacity   (ies),   and   that   by   his/her/   their
signature(s) on the instrument, the individual(s) or the person
upon   behalf   of   which   the   individual(s) acted,   executed   the
instrument.

Notary Public

_Maria Semilia_

MARIA SEMILIA
Notary Public, State Of New York
No. 01SE6069100
Qualified In Nassau County
Commission Expires Jan. 22, 20 10

# EXHIBIT C
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100*
*Civil Action No.*

12690
___
9

16,800 –

# MORTGAGE

### Between

## GREENPOINT MORTGAGE FUNDING, INC.

### and

### DR. KENNETH CRUTCH

THIS MORTGAGE made this 16 day of NOVEMBER, 2006, by and between DR. KENNETH CRUTCH residing at 3309 HARBOR POINT ROAD BALDWIN NY 11510 (the "Mortgagor"), and GREENPOINT MORTGAGE FUNDING, INC., a corporation organized and existing under and by virtue of the laws of the State of New York, having an office at 100 Wood Hollow Drive, Novato, CA 94945 (the "Mortgagee").

WITNESSETH, that the mortgagor is indebted to the Mortgagee for the payment of an indebtedness in the sum of SIX HUNDRED THOUSAND ************* 00/100 DOLLARS ($600,000.00) lawful money of the United States, to be paid, with interest thereon (as such sum may be reduced from time to time, together with the interest thereon, hereinafter sometimes collectively referred to and described as the "Debt"), according to a certain note or obligation bearing even date herewith (the "Note").

NOW THIS INDENTURE WITNESSETH that for better securing the payment of the Debt, and the performance by the Mortgagor of the terms, covenants and conditions contained herein, in the Note and in any other documents and agreements given to secure payment of the Note according to the true intent and meaning thereof, and also for and in consideration of one dollar to the Mortgagor in hand paid by the Mortgagee at or before the sealing and delivery of these presents the receipt whereof is hereby acknowledged, the Mortgagor has mortgaged, granted, bargained, sold, alienated, released, conveyed and confirmed, and by these presents does mortgage, grant, bargain, sell, alien, release, convey and confirm unto the Mortgagee, forever, and grants the Mortgagee a security interest in:

### MORTGAGED PROPERTY

A. All the land located in the County of QUEENS and State of NY described in Schedule A annexed hereto and made a part hereof (the "Land"), and known by the street address
### 199-24 LINDEN BLVD
### JAMAICA NY 11412

B. All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land (the "Improvements").

24

C. All fixtures, machinery, appliances, materials, equipment furniture and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and located in or on, or attached to, or used, or intended to be used, in connection with the operation of, or with construction on, the Land or the Improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing and all of the right, title and interest of the Mortgagor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made by the Mortgagor or on its behalf with regard thereto (the "Personal Property").

D. All right, title and interest of the Mortgagor, if any, in and to the land in the bed of the streets or highways abutting the Land to the center line thereof; all easements, rights of way, strips and gores of land, streets, ways, sidewalks, curbs, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, remainders, reversions and appurtenances whatsoever, in any way belonging, relating or appertaining to the Land or the Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor (the "Appurtenances").

E. All leases, licenses (including, without limitation, the cash and securities deposited thereunder), rents, issues and profits of the property described above in Paragraphs (A), (B), (C) and (D) (the "Rents") and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of the Mortgagor of, in and to, and all proceeds of any sales or other dispositions of, the property described in Paragraphs (A), (B), (C) and (D) above and this Paragraph (E).

F. All proceeds of and any unearned premiums on any insurance policies covering the Improvements or the Personal Property or the Rents including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof.

G. All awards ("Awards"), heretofore made and hereafter to be made by any municipal, state or federal authorities to the Mortgagor and all subsequent owners of the property described above in Paragraphs (A) through (E) including any awards for any changes of grade of streets affecting the property described above in Paragraphs (A) through (E) as the result of the exercise of the power of eminent domain (a "Taking").

H. All the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, contract rights, general intangibles, actions and rights in action, relating to the property described above in Paragraphs (A) through (G) and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing.

All the property, interests and rights referred to in Paragraphs (A) through (H) above and any additional property, interests or rights hereafter acquired by the Mortgagor and subject to the lien of this Mortgage or intended to be so are referred to in this Mortgage as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property to the Mortgagee, its successors and assigns, forever.

The Mortgagor hereby grants to the Mortgagee a security interest in all rights and property described above in Paragraphs (A) through Paragraph (H). This Agreement is a self-operative Security Agreement with respect to such rights and property, but the Mortgagor agrees to execute and deliver on demand such other instruments as the Mortgagee may request in order to perfect its security interest or to impose the lien hereof more specifically upon any of such rights and property. The Mortgagee shall have all the rights and remedies under this Mortgage, or under any applicable law or agreements with the Mortgagor, of a Secured Party under the Uniform Commercial Code in addition to those specified herein, including the right to sign the Mortgagor's name to record or continue UCC financing statements required to be periodically filed or renewed.

And the Mortgagor covenants, represents and warrants with the Mortgagee that:

## COVENANTS, REPRESENTATIONS AND WARRANTIES

1. The Mortgagor will pay the Debt as provided in the Note.

2. The Mortgagor, shall (at its expense in so far as is applicable by the context):

   (a) maintain the Improvements in good and substantial order and repair and in such fashion that the value and utility of the Mortgaged Property will not be diminished and will make or cause to be made all necessary and appropriate repairs, replacements, and renewals thereof, whether interior or exterior, structural or non-structural. All repairs, replacements and renewals shall be at least in quality and class equal to that of the original Improvements.

   (b) not use or cause the whole or any part of the Mortgaged Property to be used in such a manner as to cause the same to be subject to forfeiture under applicable laws. In the event that any person or entity, in possession of the whole or any part of the Mortgaged Property, or otherwise, may, by acts or omissions, cause the Mortgaged Property to be subject to forfeiture, the Mortgagor, within five (5) days after receiving notice of the occurrence of any such act or omission, shall notify the Mortgagee of the occurrence of such act or omission and shall commence such legal proceedings against the party committing or permitting the acts or omissions as shall be necessary to prevent such forfeiture,

   (c) comply, or cause to be complied with, with all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies officials and officers which may, as at the date of this Mortgage or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways in so far as the Mortgagor is required to comply therewith,

   (d) comply or cause to be complied with all requirements of the issuer of any policy(s) of insurance covering or affecting the whole or any part of the Mortgaged Property, and all orders, rules, regulations and other requirements of the New York Board of Title Underwriters (or that of any other body exercising similar functions) applicable to the Mortgaged Property or any part thereof,

   (e) not do or permit any act or thing which is contrary to the requirements or prohibitions of any document of record affecting the Mortgaged Property nor commit or permit any waste of or any nuisance in, at or on the Mortgaged Property or any part thereof.

3. None of the Improvements or any part or portion thereof, and none of the Personal Property or any part or portion thereof, shall be removed, altered or demolished without the prior written consent of the Mortgagee in each instance, provided, however, that the Mortgagor shall have the right, without the consent of Mortgagee, to remove and dispose of, free from the lien of this Mortgage, such Personal Property as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, any such Personal Property shall be replaced with Personal Property of like kind and value at least equal to that of the replaced Personal Property and free from any title retention, security interest or other encumbrance.

4. The Mortgagor will pay when due all liens of any kind, taxes of any kind and nature (including real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof, or upon the rents, revenues, income or profits of the Mortgaged Property, or arising in respect of the occupancy, use or possession of the whole or any part thereof, and the Mortgagor will promptly deliver official receipts therefore to the Mortgagee.

The Mortgagor will, at the option of Mortgagee, pay to Mortgagee on the first day of each calendar month one-twelfth of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months. The Mortgagee's authority to collect and hold and require Mortgagor to make payments on account of the Taxes as provided herein shall include Mortgagee's authority to collect and hold and require Mortgagor to make payments to establish cushions and to repay shortages and deficiencies and for other purposes. Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage. If the Escrow Fund is not sufficient to pay the taxes, as the same become payable, Mortgagor shall pay to Mortgagee, upon demand, the amount which mortgagee shall estimate as sufficient to make up the deficiency. Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt and shall not bear interest, unless Mortgagee is required by law to pay interest on amounts in the Escrow Fund.

5. The Mortgagor will not claim any deduction from the taxable value of the Mortgaged Property by reason of this Mortgage nor shall the Mortgagor claim or be entitled to any credit against the principal and interest due and owing under the Note and this Mortgage for any taxes, assessments, water rates or other governmental or municipal charges, bonds or impositions paid by the Mortgagor relating to the Mortgaged Property.

6. In the event of the passage after the date of this Mortgage of any law of the state wherein the Mortgaged Property is located deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for state or local purposes, or the manner of the collection of any such taxes so as to affect this Mortgage, or the Debt, the Mortgagee shall have the right to give thirty (30) days written notice to the owner of the Mortgaged Property requiring the payment of the Debt, and if such notice be given, the Debt shall become due, payable and collectible at the expiration of said thirty (30) days. Unless prohibited by applicable law, any notice given pursuant to this Paragraph requiring the payment of the Debt shall provide an option to the Mortgagor, in lieu of such acceleration, to either pay to the Mortgagee an amount or amounts equal to any and all sums payable by the Mortgagee as taxes or otherwise by reason of such laws including taxes, if any, payable on the amounts so paid to the Mortgagee or, in the alternative, pay the Debt in full. If the notice as provided above be given, the payment of said sums described in the preceding sentence or the Debt, as may be the case, shall become due, payable and collectible at the expiration of the thirty (30) day period referred to above.

7.1 If at any time the United States of America, any state thereof or any governmental subdivision of any such state, shall require (i) revenue or other stamps to be affixed to the Note or this Mortgage, or (ii) the payment of any taxes or fees on this Mortgage, or the Note or in connection with the recording of this Mortgage or any amendment, extension or modification hereof, the Mortgagor will pay the same, with interest and penalties thereon, if any. The Mortgagee shall have the right, but not the obligation, to make any such payments on behalf of the Mortgagor. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note and shall be paid by the Mortgagor to the Mortgagee, upon demand, together with interest at the Default Rate, as defined herein.

7.2 For the purpose of this Mortgage "Default Rate" means a rate equal to 5.0% per annum in excess of the interest rate then in effect with respect to the loan, but in no event higher than the maximum rate permitted by the applicable usury law to be charged by this Mortgagee.

8. The Mortgagor represents and warrants that it is the fee simple owner of the Mortgaged Property free of defects, liens, and encumbrances of any nature other than those exceptions to title as set forth in the certificate of title to the Mortgaged Property issued by COMMONWEALTH LAND TITLE #CIS-06-09132Q and redated as at the date of this Mortgage. The Mortgagor warrants that this Mortgage is and will be maintained as a valid first lien on the Mortgaged Property, subject only to the above-mentioned exceptions and will defend the same against the claims of all persons whomsoever. At the Mortgagor's sole cost and expense, the Mortgagor forthwith upon the execution and delivery of this Mortgage, and thereafter from time to time, will cause this Mortgage, and any security instrument creating or evidencing the lien or security interest hereof upon the Mortgaged Property and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law to publish notice of and fully to protect the lien hereof upon, and the lien of the Mortgagee in, the Mortgaged Property.

9. (a) The Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its sole discretion, believes should be brought to protect its interest in or the Mortgaged Property. The Mortgagee may take such action by attorneys selected by the Mortgagee.

(b) If any action or proceeding be commenced, whether adversary or not (including an action to foreclose this Mortgage or to collect the Debt), to which action or proceeding the Mortgagee is made or becomes a party, or in which it becomes necessary to defend, uphold or enforce the lien of this Mortgage, the Mortgagee may prosecute, defend or participate in such action or proceeding by attorneys selected by the Mortgagee.

(c) All sums paid by the Mortgagee for the expense of any such action or proceeding, including foreclosure proceedings, described in this Paragraph (including reasonable counsel fees and expenses) shall be paid by the Mortgagor to the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(d) In any action or proceeding to foreclose this Mortgage, or to recover or collect the Debt, the provisions of law respecting the recovery of costs, disbursements and allowances shall also be applicable.

10. (a) The Mortgagor, until the Debt secured by this Mortgage shall be fully paid and satisfied, shall keep the Improvements and the Personal Property insured, by a company or companies and by a policy or policies, in form and substance, to be approved by the Mortgagee, against:

(i) loss or damage by perils customarily included under standard "all risk" policies, and all other contingencies as may be required by the Mortgagee, in an amount to be approved by the Mortgagee not exceeding in the aggregate one hundred per centum of their full insurable value (the "Required Coverage"), so that the Mortgagor will not be deemed a co-insurer under any such policy.

(ii) if the Mortgaged Property is now located in an area having special flood hazards or if such area hereafter shall be designated by the United States Government, or any agency thereof, as having special flood hazards, a policy insuring against floods in an amount equal to the lesser of (A) the principal amount secured by this Mortgage or (B) the maximum amount available pursuant to federal law;

(iii) insurance against such other hazards (including war damage insurance, if and when the same is available from the United States Government or any agency or subdivision thereof) as may be reasonably required by the Mortgagee from time to time and as are customarily insured against with respect to like properties.

(b) At the time of the execution of this Mortgage and at least twenty (20) days prior to the expiration of each policy required to be provided by the Mortgagor pursuant to the provisions of this Paragraph, the Mortgagor shall deliver to the Mortgagee the policy or policies or the renewal policy or policies, as the case may be, with appropriate evidence of the payment of the premium therefor.

(c) The insurance policies required to be procured pursuant to this Mortgage shall:

(i) as to hazard insurance coverage, contain a standard non-contributory form of mortgagee clause satisfactory to the Mortgagee, naming the Mortgagee, its successors and assigns, as an insured in such capacity, and providing that no act, omission or negligence of the Mortgagor, or its agents, servants or employees, or of any tenant under any lease for the whole or any part of the Mortgaged Property, which might otherwise result in a forfeiture of such insurance or any part thereof, shall in any way affect the validity or enforceability of such insurance insofar as the Mortgagee is concerned,

(ii) as to all other coverage name the Mortgagor and the Mortgagee, as named insureds, as their respective interests may appear,

(iii) provide, to the extent obtainable, that such policies may not be cancelled or amended without at least thirty (30) days' prior written notice to the Mortgagee, and

(iv) include effective waivers by the insurer of all rights of subrogation against the named insured.

(d) The Mortgagor, at its expense, will furnish to the Mortgagee, within ninety (90) days after demand (but not more frequently than once in each consecutive period of twenty-four (24) calendar months) proof of the then full insurable value of the Improvements and the Personal Property, such proof to be by appraisals satisfactory in form and substance to the Mortgagee and prepared by an appraiser (who may be an appraiser for the insurance company insuring such property) designated and paid for by the Mortgagor and approved by the Mortgagee. No failure or omission on the part of the Mortgagee to request any such appraisals or proof shall relieve the Mortgagor of any of its obligations under this Paragraph.

(e) Until the full payment of the Debt, the Mortgagee shall have and hold the insurance policies described in this Paragraph as collateral and further security for the payment of the Debt. In default of the Mortgagor's compliance with this Paragraph (i) the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless against all damage, loss or liability resulting from all risks for which such insurance should have been effected or maintained and (ii) the Mortgagee or its successors or assigns may, but shall have no obligation to, place such insurance as described above, from time to time, in an amount in the aggregate not exceeding the Required Coverage, for the purpose aforesaid; and pay the premium or premiums therefor. In the event of such payment, the Mortgagor will pay to the Mortgagee, its successors or assigns such premium or premiums so paid by the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the

interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note. In addition, in the event of a default of such payment by the Mortgagor or of the delivery of policies as provided above in this Paragraph, the Debt shall, at the option of the Mortgagee, its successors or assigns, immediately become due and payable.

(f) Mortgagor hereby grants authority to Mortgagee to endorse all loss drafts in the name of the Mortgagor signing Mortgagor's name for that purpose. Mortgagor will deliver all loss drafts to Mortgagee within ten (10) days of receipt thereof. All insurers are authorized to make loss drafts payable to Mortgagee only. All such proceeds shall be applied at the option of the Mortgagee to any outstanding interest or other moneys due under the Mortgage or to principal which shall be subject to the prepayment clause in all respects or to Mortgagor for expenses actually incurred and paid by Mortgagor in the restoration of the improvements.

(g) The insurance required pursuant to this Paragraph may be effected by a policy of blanket insurance which may cover property in addition to the Mortgaged Property, provided that the coverage shall be the same as if the Mortgaged Property were the sole property insured and the Mortgagor shall deliver to the Mortgagee a duplicate original copy or copies thereof or original insurance certificates therefor.

(h) The Mortgagee reserves the right to require the Mortgagor, at any time during the term of this Mortgage, to pay to Mortgagee on the first day of each calendar month one-twelfth of an amount (the "Escrow Fund") which would be sufficient to pay the insurance premiums payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months. The Mortgagee's authority to collect and hold and require Mortgagor to make payments on account of the insurance premiums as provided herein shall include Mortgagee's authority to collect and hold and require Mortgagor to make payments to establish cushions and to repay shortages and deficiencies and for other purposes. Mortgagee will apply the Escrow Fund to the payment of the Insurance premiums which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage. If the Escrow Fund is not sufficient to pay the insurance premiums, as the same become payable, Mortgagor shall pay to Mortgagee, upon demand, the amount which Mortgagee shall estimate as sufficient to make up the deficiency. Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt and shall not bear interest, unless Mortgagee is required by law to pay interest on amounts in the Escrow Fund.

11.1 The Mortgagor shall give the Mortgagee prompt notice of any damage or destruction by fire or casualty occurring on the Mortgaged Property, as well as of any condemnation or eminent domain proceedings affecting the same.

11.2 The Mortgagor will not enter into any agreement for a Taking of the Mortgaged Property, or any part thereof, without the prior written consent of the Mortgagee.

12. In the event the whole or any part of the Mortgaged Property shall be the subject of a Taking, or shall be voluntarily conveyed in lieu thereof prior to the payment in full of the Debt, the Mortgagor shall pay to the Mortgagee, during the period from the date of a Taking or conveyance in lieu thereof, to the payment in full of the Debt, the difference, if any, between the interest payable thereon at the rate stipulated in the Note in respect of the Debt and the interest actually paid to the Mortgagor by the entity exercising the power of eminent domain or to whom the Mortgaged Property was conveyed in lieu of the exercise of such power.

13.1 All Awards are hereby assigned to the Mortgagee. The Mortgagee and its legal representatives, successors and assigns (at its or their option) are hereby irrevocably authorized and empowered to collect and receive the Awards from the authorities making the same, to give proper receipts and acquittances therefor in any of their names or in the name of the Mortgagor, and to apply the same toward the payment of the Debt, the Note or this Mortgage, in such priority and proportions as the Mortgagee in its discretion shall deem proper, although the Debt secured by this Mortgage then may not be due and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by the Mortgagee of any Awards, the Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive any Awards, or a portion thereof sufficient to pay the Debt, whichever is less.

13.2 Notwithstanding any Taking, the Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note and in this Mortgage and the Debt shall not be reduced until any Awards shall have been actually received and applied by the Mortgagee to the discharge of the Debt. The Mortgagor shall file and prosecute its claim or claims for any Awards in good faith and with due diligence and cause the same to be collected and paid over to the Mortgagee. The Mortgagor, further, hereby irrevocably appoints the Mortgagee and its officers and employees their attorney-in-fact of the Mortgagor, coupled with an interest, to file, prosecute, settle, and compromise its claims for any Awards, to receive any Awards and to endorse any instruments with respect thereto. The Mortgagor further agrees that although it is hereby expressly agreed that the same shall not be necessary in any event, the Mortgagor shall, upon demand, of the Mortgagee, make, execute and deliver to it any and all assignments and other instruments sufficient for the purpose of assigning any Awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

14. The Mortgagor within six (6) days upon request in person or within fifteen (15) days upon request by mail will furnish a written statement, duly acknowledged, of the amount due on the Debt and this Mortgage and whether any offsets and defenses exist against the Debt.

15.1 The Mortgagor shall furnish to the Mortgagee such financial data or information as the Mortgagee may reasonably request from time to time.

15.2 The Mortgagor will keep adequate records and books of account in accordance with generally accepted accounting principles consistently applied and will permit the Mortgagee, by its agents, accountants and attorneys, to visit and inspect the Premises and examine Mortgagor's records and books of account and to discuss its affairs, finances and accounts with the officers of the Mortgagor, at such reasonable times as may be requested by the Mortgagee.

16. The Mortgagor shall not, without the consent in writing of the Mortgagee, voluntarily sell, transfer, or convey its interest in the Mortgaged Property or any part thereof in or by any one or series of transactions or permit the Mortgaged Property or any part thereof or any interest therein to be sold, transferred, or conveyed. For the purposes of this Paragraph, a "sale" shall include: dissolution, sale of stock and/or sale of assets of the Mortgagor, conveyance or sale by the present ownership to any other persons or parties resulting in a material change in the identity or control of the present shareholders, officers and/or directors of the Mortgagor or conversion to a form different than the legal entity or equitable ownership of the Mortgaged Property without the consent of the Mortgagee. Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to further or successive transactions.

17. The Mortgagor shall not, without first obtaining the prior written consent of the Mortgagee in each such instance:

(a) mortgage, convey or grant a lien subordinate to this Mortgage on the Mortgaged Property, or on any or all of the Land, Improvements, Personal Property or Appurtenances of which it is comprised; or

(b) grant a security interest subordinate to the lien and security interest of this Mortgage on the Mortgaged Property; or

(c) assign the rents of the Mortgaged Property.

Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions.

18. The Mortgagor shall discharge of record, by the filing of a bond pursuant to court order or otherwise, any mechanic's or materialmen's lien or a judgment lien filed against the Mortgaged Property, within thirty (30) days after the filing thereof.

19. The Mortgagor shall not execute or file or record any instrument which imposes a restriction upon the sale or occupancy of the Mortgaged Property on the basis of race, sex, religion, national origin, color or creed. Upon any violation of this undertaking, the Mortgagee may, at its option, declare the unpaid balance of the Debt to be immediately due and payable.

20. The Mortgagor will, if other than a natural person, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, partnership, trust or other entity under the laws of the jurisdiction of its formation or incorporation and will comply with all regulations, rules, ordinances, laws, statutes, orders and decrees of any governmental authority applicable to it or to the Mortgaged Property, or any part thereof. If the Mortgagor herein is a corporation, then the Mortgagor represents that the execution of this Mortgage has been duly authorized by the Board of Directors of the Mortgagor and this Mortgage is made in the regular and ordinary course of business. If the Mortgagor herein is a partnership or joint venture, then the Mortgagor represents that all of its general partners, and, to the extent required by law and its organizational documents, its limited partners, if any, have authorized the execution of this Mortgage and this Mortgage is made in the regular and ordinary course of business.

21. Nothing herein or in the Note, and none of the terms, covenants or conditions hereof or thereof shall impose or shall be deemed to impose upon the Mortgagor an obligation to make any payment, pay any interest or late charges in excess of, or do any act or take any action, or forbear from doing any act or taking any action, in violation of any statute, rule, ordinance or regulation in effect and effective as of the date of such payment, act, action or forbearance. In no event shall the Mortgagor be required to make any such illegal or impermissible payment or to take or do any such illegal or impermissible act or forbear from so doing or so taking nor shall any such failure so to pay or act or such forbearance be deemed a default hereunder. If the provisions of this Mortgage would at any time otherwise require payment by the Mortgagor to the Mortgagee of an amount of interest in excess of the maximum amount then permitted by law, the interest payments to the Mortgagee shall be reduced to the extent necessary so that the Mortgagee shall not receive interest in excess of such maximum amount. To the extent that, pursuant to the foregoing sentence, the Mortgagee shall receive interest payments hereunder in an amount less than the amount otherwise provided, such deficit (the "Interest Deficit") will accumulate and will be carried forward (without interest) until the Debt is paid in full. Interest otherwise payable to the Mortgagee hereunder for any subsequent period shall be increased by the maximum amount of the Interest Deficit that may be so added without causing the Mortgagee to receive interest in excess of the maximum amount then permitted by law. The terms, covenants and conditions hereof or of the Note requiring any such illegal or impermissible payment, act, action or forbearance on the part of the Mortgagor to be made or taken are deemed amended, modified or altered in such a manner as to bring all and each of them into conformity with the applicable statutes, rules, ordinances or regulations in respect of the Mortgagor and the Mortgagor hereby covenants and agrees to abide by, conform to and comply with any and all such terms, covenants and conditions as so amended, modified or altered.

22. In addition to the Note, this Mortgage is intended to secure and provide for the payment and performance of any and all obligations now due and owing or which may hereafter be or become due or owing by the Mortgagor to the Mortgagee, however the maximum amount secured by this Mortgage at execution or which under any contingency may be secured hereby at any time in the future shall not exceed in the aggregate (i) the stated principal amount of this Mortgage (ii) interest, and (iii) all other amounts advanced by the Mortgagee and secured by this Mortgage in accordance with the terms hereof for the protection of the Mortgaged Property or the preservation of the lien of this Mortgage or both. The obligation of the Mortgagee to make further or future advances or re-advances shall be optional with the Mortgagee. Advances and re-advances may be made under the provisions hereof, or otherwise, to the present or any future owner of the Mortgaged Property.

23. Pursuant to Section 291-f of the Real Property Law of the State of New York, neither the Mortgagor nor any tenant of the Mortgaged Property or the Improvements or any part of either shall have the right or power, as against the Mortgagee without its consent, to cancel, abridge or otherwise modify tenancies, subtenancies, leases or subleases now or hereafter in effect in respect of all or any part of the Mortgaged Property or the Improvements or to accept or make, as the case may be, prepayments of installments of rent to become due thereunder. The Rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee as further security for the payment of the Debt, and the Mortgagee shall have the right to enter upon the Mortgaged Property for the purpose of collecting the same and to let and operate the Mortgaged Property or any part thereof and to apply the Rents, issues and profits, either in whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the Mortgaged Property or in reduction of any part of the Debt or other sums due or to become due under the Note or this Mortgage. This assignment and grant shall continue in effect until the Debt and all other obligations secured by this Mortgage are paid. The Mortgagee hereby waives the right to enter upon the Mortgaged Property for the purpose of collecting the Rents and the Mortgagor shall have a license to collect and receive the Rents until default hereunder, but such license of the Mortgagor may be revoked by the Mortgagee upon any such default. The Mortgagee may apply all Rents or any part thereof so received hereunder, after the payment of all of its expenses including costs and attorneys' fees, to the Debt in such manner as it elects or at its option the entire amount or any part thereof so received may be released to the Mortgagor.

24. Nothing herein contained shall be construed as depriving the Mortgagee of any right or advantage available under Section 254 or 271 of the Real Property Law of the State of New York or any other similar, applicable law of the state in which the Mortgaged Property is located, but all covenants herein differing therefrom shall be construed as conferring additional and not substitute rights and advantages, except that the provisions of this Mortgage shall supersede the provisions of subdivision 4 of said Section 254.

25. The Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times upon reasonable notice.

26. This Mortgage may not be changed or modified orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought. THE MORTGAGOR ACKNOWLEDGES DELIVERY TO IT, WITHOUT CHARGE THEREFOR, OF A COPY HEREOF AND OF THE NOTE.

27. This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

28. If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision.

29. If the Mortgagor consists of more than one person or entity, the obligations and liabilities of each such person or entity hereunder shall be joint and several. The relative words herein of single or plural number, or masculine or feminine or neuter gender shall be read as if written in the single or plural, or in the male, neuter or female gender, as the context and as the case may be.

30. The covenants, agreements and options herein contained shall bind and inure to the benefit of the heirs, distributees, executors, administrators, successors and assigns of the parties hereto but the foregoing provisions of this Paragraph shall not constitute a waiver of the provisions of Paragraphs 16 and 17 above.

31. If the Mortgagor shall well and truly pay to the Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth in this Mortgage and in the Note, then these presents and the estate hereby granted shall cease, determine and be void.

## DEFAULTS

32. The Debt shall become due, at the option of the Mortgagee, upon the occurrence of any of the following events:

(a) after default in the payment of any installment of principal or interest as provided in the Note,

(b) after default in payment and reimbursement of the Mortgagee, after demand, for any costs, expenses, and fees advanced or incurred by the Mortgagee in curing any default or failure of the Mortgagor under this Mortgage,

(c) if any warranty, representation or certification made herein or in any financial statement furnished pursuant hereto or in connection with the loan evidenced by the Note shall be materially false,

(d) after default in keeping the Mortgaged Property insured as herein provided,

(e) after default after notice and demand either in assigning and delivering the policies insuring the Improvements or the Personal Property against loss as hereinafter provided for or in reimbursing the Mortgagee for premiums paid on such insurance, as hereinabove provided for,

(f) after default upon request in furnishing a statement of the amount due on this Mortgage and whether any offsets or defenses exist against the Debt, as hereinabove provided for,

(g) upon the actual or threatened alteration, demolition or removal of any of the Improvements erected or to be erected upon the Mortgaged Property or of the Personal Property,

(h) if the Mortgagor does or permits to be done anything that may in any way impair the lien of this Mortgage or impair the value of the Mortgaged Property or any of the Improvements or weaken or diminish the security intended to be given under and by virtue of this Mortgage, or

(i) upon the failure of the Mortgagor to perform or comply with any other covenant, agreement or condition of this Mortgage, the Note or any other agreement between the Mortgagor and the Mortgagee in accordance with the terms hereof and thereof.

33. The Debt shall also become due, at the option of the Mortgagee, upon the occurrence of any of the following events:

(a) after default, for thirty (30) days, in the payment of any taxes of any kind and nature, assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof,

(b) after failure for thirty (30) days to exhibit to the Mortgagee receipted bills for any tax, water rate or assessment herein referred to, or

(c) if the Mortgagee shall give the written notice specified above in Paragraph 6.

34. The Debt shall, forthwith, become due upon the occurrence of any of the following events; the Mortgagor or any guarantor of the payment of the Note and/or of this Mortgage shall:

(a) call a meeting of or make an assignment for the benefit of creditors,

(b) file a petition in bankruptcy, or be adjudicated insolvent or bankrupt,

(c) suffer an order for relief under any federal bankruptcy law, or petition or apply to any tribunal for the appointment of a receiver or a trustee for it or a substantial part of its assets,

(d) commence any proceedings under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect,

(e) have filed against it a petition, application or proceeding described above in subdivision (d) or such a petition, application or proceeding shall have been commenced against it, which remains undismissed or unstayed for a period of thirty (30) days or more,

39. In case of a sale in foreclosure, the Mortgaged Property, or so much thereof as may be affected by this Mortgage, may be sold in one or more parcels or interests and in such order as the Mortgagee shall determine in its sole discretion. The Mortgagor waives and releases any right to have the Mortgaged Property marshalled.

40. In the event of a foreclosure of this Mortgage or the succession by the Mortgagee to the interests of the Mortgagor hereunder, the purchaser of the Mortgaged Property or such successor shall succeed to all rights of the Mortgagor, including any right to proceeds of insurance and to unearned premiums, and in and to all policies or certificates of insurance assigned and delivered to the Mortgagee pursuant to this Mortgage.

41. If the Mortgagor shall fail to perform or comply with any covenant, representation, warranty, agreement or condition of this Mortgage, the Mortgagee shall have the right, but not the obligation, to perform and comply with any such covenant, representation, warranty, agreement or condition. The cost thereof paid by the Mortgagee together with all costs, expenses and disbursements shall be paid by the Mortgagor to the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

42. The Mortgagee may be the purchaser of the whole or any part of the Mortgaged Property or of any interest therein at any sale of the Mortgaged Property whether pursuant to foreclosure or power of sale or otherwise hereunder and may apply upon the purchase price any sum the payment of which is secured by this Mortgage. The Mortgagee, upon any such purchase, shall acquire good title to the properties so purchased free of the lien of this Mortgage and free of all equities and rights of redemption in the Mortgagor.

43. The obligation of this Mortgage and of the Note shall continue until the Debt is paid in full notwithstanding any action or actions or partial foreclosure which may be brought to recover any amount or amounts for installments of principal, interest, taxes, assessments, water rates or insurance premiums or other sums or charges due and payable under the provisions of this Mortgage.

44. The Mortgagor hereby waives the right to a trial by jury, the right to claim any offset and to assert a counterclaim in any action or proceeding in which the Mortgagor and the Mortgagee are parties brought by the Mortgagee to enforce its rights hereunder.

45. Any assignee of this Mortgage and the Note shall take the same free and clear of all offsets, counterclaims and defenses of any nature whatsoever which the Mortgagor may have against any assignor of this Mortgage and the Note and no such offset, counterclaim or defense shall be interposed or asserted by the Mortgagor in any action or proceeding brought by any such assignee upon this Mortgage and/or the Note and any such right to interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by the Mortgagor.

46. The Mortgagor shall not be relieved of the Mortgagor's obligation to pay the Debt at the time and in the manner provided for in the Note and this Mortgage by reason of (i) failure of the Mortgagee to comply with any request of the Mortgagor or any guarantor of the payment of the Note and/or of this Mortgage to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or of any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property or any other security for the Debt or the release of any individual or entity guaranteeing the payment of the Note and/or of this Mortgage, or (iii) the extension or modification of this Mortgage or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Note and/or of this Mortgage or any portion thereof, without first having obtained the consent of the Mortgagor, and in the last event, the Mortgagor shall

continue to he obligated to pay the Debt at the time and in the manner provided in the Note and this Mortgage, as so extended or modified, unless expressly released and discharged by the Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien, encumbrance, right, title or interest in or to the Mortgaged Property, the Mortgagee may release any person at any time liable for the payment of the Debt or any portion thereof or any individual or entity guaranteeing the payment of the Note and/or of this Mortgage or any part of the security held for the Debt or with respect to any guarantee, and may extend the time of payment or otherwise modify the terms of the Note and/or this Mortgage, including, without limitation, a modification of the interest rate payable on the principal balance of the Note, without in any manner impairing or affecting this Mortgage or the lien thereof or the priority of this Mortgage, as so extended and modified, as security for the Debt over any such subordinate lien, encumbrance, right, title and interest. The Mortgagee may resort for the payment of the Debt to any other security or guarantee held by the Mortgagee in such order and manner as the Mortgagee, in its discretion, may elect. The Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every additional right and remedy now or hereafter afforded by law or equity.

47. The Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right to the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

48. All remedies provided in this Mortgage are distinct from and cumulative to any other right or remedy under this Mortgage, the Note, the Loan Agreement, any guarantee of the payment of the Note and/or of this Mortgage or any other agreement between, among others, if any, the Mortgagor and the Mortgagee executed simultaneously or in connection herewith, or afforded by law or equity, and may be exercised concurrently, independently or successively. Wherever in this Mortgage the prior consent of the Mortgagee is required, the consent of the Mortgagee given as to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions. Any such consents shall be in writing.

49. Any forbearance by the Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by the Mortgagee or other corrective or security protecting measures by the Mortgagee shall not be a waiver of the Mortgagee's right to accelerate the maturity of the Debt.

## SPECIAL PROVISIONS

50. (a) The Mortgagor acknowledges that, in the event of foreclosure of the Mortgaged Property, the Mortgagee may be required to comply with Article 31-B, New York State Tax Law, also known as the Real Property Gains Tax Law, as it may be amended from time to time (the "Statute"). To enable the Mortgagee to comply with the Statute, if required, the Mortgagor hereby agrees to assist and cooperate with the Mortgagee by furnishing or executing, acknowledging, if required, and delivering such documents, instruments, agreements, forms, schedules and information as the Mortgagee may reasonably request in connection therewith, to the extent the same is available to the Mortgagor, and the Mortgagor agrees to pay the tax that may be due under the Statute.

(b) Without limiting the generality of the foregoing, the Mortgagor shall:

(i) maintain information, documents and records of all capital improvements made to the Mortgaged Property in sufficient detail to comply with the requirements of the Statute.

(ii) upon demand of the Mortgagee, deliver copies to the Mortgagee of and make available for inspection and examination at any time upon demand by the Mortgagee or its duly-authorized agent or employee, all such information, documents and records kept in accordance with the Statute or required by the Mortgagee to enable it to comply therewith. Such records shall be kept by the Mortgagor for the duration of this Mortgage.

(iii) in the event of a foreclosure of the Mortgaged Property, prepare, submit, affirm and file with the applicable authority, all forms, returns and documents required of a transferor and undertake all appropriate measures and procedures to comply with the Statute.

(iv) in the event of a foreclosure of the Mortgaged Property, pay the tax determined by the applicable authority to be due. If the Mortgagor fails to perform or comply with the Statute or this Paragraph or fails to pay the tax required by the Statute, the Mortgagee may, but without any obligation to do so and without notice to or demand on the Mortgagor and without releasing the Mortgagor from any obligation, so perform or comply or pay any and all taxes owing under the Statute in such manner and to such extent as the Mortgagee may deem necessary to protect the security of, or to enable it to foreclose the lien of, this Mortgage. All such costs paid by the Mortgagee and the interest thereon at the Default Rate shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(c) In connection with a foreclosure of the Mortgaged Property, the amount of such tax (and any interest, penalty, fine or other related charges imposed in connection therewith) shall be allowed to the Mortgagee out of the proceeds of any sale or conveyance; and treated as a cost and expense of foreclosure to which the proceeds thereof (or of any of the other aforesaid transactions) shall first be applied.

(d) The Mortgagor hereby assumes complete liability for any costs, penalties, expenses and fees assessed against or paid by the Mortgagee, including reasonable attorneys', accountant's, architect's, and other professionals' or experts' fees and disbursements, which are associated with the performance, payment or compliance with the Statute, and for any costs, penalties and fees assessed as a consequence of a violation by the Mortgagor of this Paragraph.

(e) The Mortgagor also acknowledges and agrees that this Paragraph may be specifically enforced and that the rights of the Mortgagee set forth in this Paragraph are not exclusive and are without limitation of any other rights and remedies to which the Mortgagee shall be entitled pursuant to law or equity.

51. The Mortgaged Property is not improved nor is to be improved by one or more structures containing, in the aggregate, not more than six residential units, each unit with separate cooking facilities.

52. In compliance with Section 13 of the New York State Lien Law, the Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement (as defined in Section 2 of the Lien Law of the State of New York, whether or not the Mortgaged Property is located in that State), and the Mortgagor will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.

53. All notices or other communications required to be given pursuant to this Mortgage shall be in writing and be deemed given on the second business day of the Mortgagee next following the deposit of such written notice or communication enclosed in a prepaid wrapper, certified mail, return receipt requested, in a post office or official depository under the care and custody of the United States Postal Service, addressed as follows:

If to the Mortgagor:            DR. KENNETH CRUTCH


                                3309 HARBOR POINT ROAD
                                BALDWIN NY 11510

If to the Mortgagee:            GreenPoint Mortgage Funding, Inc.
                                P.O. Box 84013
                                Columbus, Georgia 31908-4013

Any party may change the person or address to whom or which notices are to be given hereunder, by notice duly given hereunder; provided, however, that any such notice shall be deemed to have been given hereunder only when actually received by the party to which it is addressed.

54. Intentionally omitted prior to execution.

55. Intentionally omitted prior to execution.

56. If the Mortgagor shall request the Mortgagee's consent or approval pursuant to any of the provisions of this Mortgage or otherwise, and the Mortgagee shall fail or refuse to give, or shall delay in giving, such consent or approval, the Mortgagor shall in no event make, or be entitled to make, any claim for damages (nor shall the Mortgagor assert, or be entitled to assert, any such claim by way of defense, set-off, or counterclaim) based upon any claim or assertion by the Mortgagor that the Mortgagee unreasonably withheld or delayed its consent or approval, and the Mortgagor hereby waives any and all rights that it may have, from whatever source derived, to make or assert any such claim. The Mortgagor's sole remedy for any such failure, refusal, or delay shall be an action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where the Mortgagee has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, the Mortgagee may not unreasonably withhold or delay the same.

57.    (a) For purposes of this Mortgage, the following terms shall have the following meanings:

"Hazardous Materials" - shall mean existing and future asbestos, urea formaldehyde foam insulation, polychlorinated bithenyls or related or similar materials, petroleum products, explosives, radioactive materials, or any other hazardous or toxic or harmful materials, wastes and substances or any other chemical, material, substance or element which are defined, determined, identified, prohibited, limited or regulated by the Environmental Laws, or any other chemical, material, substance or element which is known to be harmful to the health or safety of occupants of property or which are defined as a hazardous or toxic substance by any federal, state, or local law, ordinance, rule or regulation, including, but not limited to the Federal Water Pollution Control Act (33 U.S.C. (1251 et seq.), the Clean Air Act (42 U.S.C. (7401 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. (6901 et seq.), the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. (9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. (1801 et seq.), and/or the regulations promulgated in relation thereto, all as the same may be amended from time to time (collectively, the "Federal Statutes"), the New York State Environmental Conservation Law Article 27, Title 13, (the "State Statute"), and the regulations promulgated in relation thereto, all as the same may be amended from time to time.

"Environmental Laws" - shall mean any applicable federal, state or local laws, rules, regulation, resolutions, ordinances, directives or orders (whether now existing or hereafter enacted or promulgated) or any judicial or administrative interpretation of such laws, rules, regulations, resolutions, ordinances, directives or orders or any other applicable determination regarding land, water, air, health, safety or environment, including for example but not limited to, the Federal Statutes and the State Statute.

"Governmental Authority" - shall mean any federal, state, or local government, governing body, agency, court, tribunal, authority, subdivision, bureau or other recognized body having jurisdiction to enact, promulgate, interpret, enforce, review or repeal any Environmental Law.

"Environmental Complaint" - shall mean any judgment, lien, order, complaint, notice, citation, action, Proceeding or investigation Pending before any Governmental Authority, including, without limitation, any environmental regulatory body, with respect to or threatened against or affecting the Mortgagor or relating to its business, assets, property or facilities or the Mortgaged Property, in connection with any Hazardous Material or any Hazardous Discharge or any Environmental Law.

"Hazardous Discharge" - shall mean any release of a Hazardous Material caused by the seeping, spilling, leaking, pumping, pouring, emitting, using, emptying, discharging, injecting, escaping, leaching, dumping or disposing of any Hazardous Material into the environment, and any liability for the costs of any cleanup or other remedial action.

(b) The Mortgagor covenants, represents and warrants that:

(i) to the best of the Mortgagor's knowledge, after due inquiry and investigation, none of the real property owned or occupied by the Mortgagor and located in the state in which the Mortgaged Property is situated, including, but not limited to the Mortgaged Property, has ever been used by previous owners, operators or occupants or the Mortgagor to generate, manufacture, refine, transport, treat, store, handle or dispose, transfer, produce, process or in any manner deal with any Hazardous Material,

(ii) the Mortgagor has not received a summons, citation, directive, letter or other communication, written or oral, from any Government Authority concerning any intentional or unintentional action or omission on the Mortgagor's part which had resulted in the violation of any Environmental Laws, as the same may relate to the Mortgaged Property,

(iii) to the best of the Mortgagor's knowledge, after due inquiry and investigation, no lien has been attached to any revenues or any real or personal property owned by the Mortgagor and located in the state where the Mortgaged Property is located, including, but not limited to the Mortgaged Property, for "Damages" and/or "Cleanup and Removal Costs", as such terms are defined in any Environmental Law, or arising from an intentional or unintentional act or omission in violation thereof by the Mortgagor or by any previous owner and/or operator of such real or personal property, including, but not limited to the Mortgaged Property,

(iv) the Mortgagor has duly complied, and shall continue to comply, with the provisions of the Environmental Laws governing it, its business, assets, property, facilities and the Mortgaged Property, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws,

(v) the Mortgagor shall not, and shall not permit any of its officers, partners, employees, agents, contractors, licensees, tenants, occupants or others to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with any Hazardous Material on the Mortgaged Property,

(vi) there is not now outstanding any Environmental Complaint issued by any Governmental Authority to the Mortgagor or relating to the Mortgagor's business, assets, property, and facilities or the Mortgaged Property under any Environmental Law, and there is not now existing any condition which, if known by the proper authorities, could result in any Environmental Complaint, and that

(vii) the Mortgagor has, and will continue to have, all necessary licenses, certificates and permits under the Environmental Laws relating to the Mortgagor and its facilities, property, assets, and business, and the Mortgaged Property and the foregoing are in compliance with all Environmental Laws.

(c) If the Mortgagor receives any notice of (i) the presence of Hazardous Materials on the Mortgaged Property, (ii) any violation of or noncompliance with any Environmental Law, (iii) the occurrence of a Hazardous Discharge on or about any asset, business, facility or property of the Mortgagor or caused by the Mortgagor, or (iv) any Environmental Complaint affecting the Mortgagor or the Mortgaged property or the Mortgagor's operations, assets, business, facilities or properties, then the Mortgagor will give written notice of the foregoing to the Mortgagee within ten (10) days of receipt thereof and shall (1) promptly comply with the Environmental Laws and all other laws, regulations, resolutions and ordinances to correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint and (2) shall (i) post a bond from a surety or (ii) a letter of credit issued by a lending institution, with the Mortgagee, the surety or the lending institution, and the form, substance and amount of the bond or letter of credit to be reasonably satisfactory to the Mortgagee and the applicable Governmental Authority, or shall give to the Mortgagee and the applicable Governmental Authority such other security satisfactory in form, substance and amount to both the Mortgagee and the applicable Governmental Authority to assure that the Mortgagor does correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint.

(d) Without limitation of the Mortgagee's rights under this Mortgage or applicable law, the Mortgagee shall have the right, but not the obligation, to exercise any of its rights to cure as provided in this Mortgage or to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable to correct, contain, cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Material, Hazardous Discharge or Environmental Complaint upon its receipt of any notice from any person or entity or Governmental Authority, informing the Mortgagee of such Hazardous Material, Hazardous Discharge or Environmental Complaint, which if true, could adversely affect the Mortgagor or any part of the Mortgaged Property or which, in the sole opinion of the Mortgagee, could adversely affect its collateral security under this Mortgage. All reasonable costs and expenses incurred and paid by the Mortgagee in the exercise of any such rights shall be paid by the Mortgagor to the Mortgagee upon demand together with the interest thereon at the Default Rate of interest. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(e) Upon written request, the Mortgagor shall provide to the Mortgagee the following information pertaining to all operations conducted in or on the Mortgaged Property:

(i) copies of all licenses, certificates and permits under the Environmental Laws;

(ii) material safety data sheets and maps, diagrams and site plans showing the location of all storage areas and storage tanks for all Hazardous Materials or other chemicals in, use at, manufactured at, brought to or stored at the Mortgaged Property;

(iii) copies of all materials filed with any Governmental Authority;

(iv) a description of the operations and processes of the Mortgagor; and

(v) any other information which the Mortgagee may reasonably require.

(f) Upon reasonable notice to the Mortgagor, the Mortgagee, its officers, employees, agents and contractors, may enter the Mortgaged Property to inspect it and to conduct, complete and take such tests, samples, analyses and other processes as the Mortgagee shall require to determine the Mortgagor's compliance with this Paragraph and the Environmental Laws. The costs, expenses and fees of the Mortgagee of such entry, inspection, tests, samples, analyses and processes shall be paid and reimbursed by the Mortgagor upon demand by the Mortgagee. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(g) In addition to those events of default previously specified in this Mortgage, the occurrence of any of the following events shall constitute a default under this Mortgage, entitling the Mortgagee to all rights and remedies provided therefor:

(i) if the Mortgagor shall fail to comply with any provision of this Paragraph; or

(ii) if any Governmental Authority asserts or creates a lien upon any or all of the Mortgaged Property by reason of the presence of Hazardous Materials or the occurrence of a Hazardous Discharge or Environmental Complaint or otherwise, and the Mortgagor does not, within the earlier of thirty (30) days after the recording thereof or prior to the institution by such Governmental Authority of any steps to foreclose such lien, cause such lien to be discharged of record.

(iii) if any Governmental Authority asserts a claim against the Mortgagor, the Mortgaged Property or the Mortgagee for damages or cleanup or remedial costs related to any Hazardous Materials or any Hazardous Discharge or any Environmental Complaint; provided, however, such claim shall not constitute a default if, within five (5) business days of the Mortgagor's receipt of notice of the foregoing:

(1) the Mortgagor can prove to the Mortgagee's reasonable satisfaction that the Mortgagor has commenced and is diligently pursuing either: (A) a cure, remedy or correction of the event which constitutes the basis for the claim, and is continuing diligently to pursue such cure or correction to completion, in strict compliance with the Environmental Laws or Environmental Complaint, as applicable, or (B) proceedings for injunction, a restraining order or other appropriate emergency relief prevent such Governmental Authority from asserting such claim, which relief is granted within ten (10) days of the occurrence giving rise to the claim and the injunction, order or emergency relief is not thereafter dissolved or reversed on appeal; and

(2) in either of the foregoing events, the Mortgagor shall (i) give such surety or other security, which may be required by and satisfactory to both the Governmental Authority asserting the claim and to the title company insuring the interest of the Mortgagee under this Mortgage (the "Title Company"), to secure the proper and complete cure or correction of the event which constitutes the basis for the claim or, (ii) at the Mortgagee's request if no such bond or security has been given, the Mortgagor shall post a bond from a surety or a letter of credit issued by a lending institution, with the Mortgagee, the surety or the lending institution, and the form, substance and amount of the bond or letter of credit to be reasonably satisfactory to the Mortgagee and to the Title Company, or shall give to the Mortgagee and the Title Company such other security satisfactory in form, substance and amount to the Mortgagee and to the Title Company, to secure the payment for all of the work, labor and services required to effect a proper and complete cure or correction of the condition which constitutes the basis for the claim.

(h) The Mortgagor covenants and agrees, at its sole cost and expense, to indemnify, protect, and save the Mortgagee harmless against and from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including, without limitation, reasonable attorneys' and experts' fees and disbursements) which may at any time be imposed upon, incurred by or asserted or awarded against the Mortgagee and arising from or out of:

(i) the Mortgagor's failure to perform and comply with this Paragraph, or

(ii) any Hazardous Material, any Hazardous Discharge, any Environmental Complaint, or any Environmental Law applicable to the Mortgagor, its operations, business, assets, property or facilities, or the Mortgaged Property, or

(iii) any action against the Mortgagor under this indemnity.

58. (a) The Mortgagor hereby consents to the jurisdiction of the courts of the State of New York and the state where the Mortgaged Property is located if the Mortgaged Property is not located in the State of New York in any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage. In addition, the Mortgagor irrevocably and unconditionally waives any objection which the Mortgagor may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with the Note or this Mortgage brought in any of the aforesaid courts, and hereby further irrevocably and unconditionally waives the right to plead or claim that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum; and

(b) the Mortgagor waives the requirements of personal service in connection with any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage, and consents that all service of process may be made by certified mail, return receipt requested, addressed to the Mortgagor at the address of the Mortgagor set forth above in Paragraph 53 as such address may be changed as therein set forth.

59. Except to the extent that the law of the state where the Mortgaged Property is located must be applied because this Mortgage constitutes a lien on premises located in that state, this Mortgage shall be construed in accordance with the laws of the State of New York.

60. The Mortgagee shall, within thirty (30) days following written request therefor, but not more frequently than twice in any twelve month period, furnish to the Mortgagor a statement setting forth the principal balance then outstanding on the Note, accrued interest thereon to the date of the statement and the date to which such interest has been paid.

61. The Mortgagor will, at the request of the Mortgagee and at the cost and expense of the Mortgagor (a) promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage, or in the execution, acknowledgment or recordation hereof, or (b) promptly do, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, deeds of trust, amendments, supplements, assignments, estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as the Mortgagee may reasonably require from time to time in order to (i) effectuate the purposes of this Mortgage, (ii) subject to the lien and security interest hereby created any of the Mortgagor's properties, rights or interests covered or now or hereafter intended to be covered hereby, (iii) perfect and maintain such lien and security interest, or (iv) convey, grant, assign, transfer and confirm unto the Mortgagee the rights granted or now or hereafter intended to be granted to the Mortgagee hereunder or under any other instrument executed in connection with this Mortgage or which the Mortgagor may be or become bound to convey, mortgage or assign to the Mortgagee in order to carry out the intention or facilitate the performance of the provisions of this Mortgage.

62. Assumability. Notwithstanding anything to the contrary contained herein, a mortgage (including consolidated mortgages) encumbering the premises that is held by Mortgagee shall be assumable by a creditworthy borrower provided the following conditions are satisfied:

(i) the creditworthiness of the party or parties assuming the loan must be satisfactory in all respects to the Mortgagee as determined by the Mortgagee in its sole discretion;

(ii) an assumption fee shall be paid to Mortgagee in an amount equal to 1% of the outstanding principal amount of the loan to be assumed;

(iii) the loan to be assumed must not have been previously assumed; and

(iv) the interest rate, terms and conditions applicable to the loan being assumed shall be changed to be those terms and conditions contained in a new commitment letter issued to the party assuming the loan.

IN WITNESS WHEREOF this Mortgage has been duly executed by the Mortgagor on the day and year first above written.

IN PRESENCE OF:

_____
DR. KENNETH CRUTCH

State of New York)
                        ss.:
County of NASSAU)

On the 16 day of NOVEMBER in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared **DR. KENNETH CRUTCH**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public
MARIA SEMILIA
Notary Public, State Of New York
No. 01SE6069100
Qualified In Nassau County
Commission Expires Jan. 22, 20 10

## SCHEDULE A

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as "Map of 335 lots belonging to St. Albans Improvement Co., situated in the 4th Ward of the Borough of Queens, N.Y.C., surveyed by Fred L. Bartlett C.E. & C.S., August 1905", and filed in the Queens County Clerk's (now Register's Office) on 2/7/06 as and by part of lots 1 and 2 in Block 3, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Linden Boulevard, as widened, with the westerly side of 200th Street;

RUNNING THENCE: southerly along the westerly side of 200th Street, 84.87 feet;

THENCE: westerly parallel with Linden Boulevard, 40 feet;

THENCE: northerly parallel with 200th Street, 84.87 feet to the southerly side of Linden Boulevard;

THENCE: easterly along the southerly side of Linden Boulevard, 40 feet to the point or place of BEGINNING.

MORTGAGE NO.: 0203119862
TITLE NO.. CIS-06-09132Q (COMMONWEALTH LAND TITLE)

PREMISES: 199-24 LINDEN BLVD
JAMAICA NY 11412

District : -
Section: - 54
Block: - 12620
Lot: - 9
County: - QUEENS

---

### DR. KENNETH CRUTCH

### TO

### GREENPOINT MORTGAGE FUNDING, INC.

---

MORTGAGE

---

RETURN BY MAIL TO:
GreenPoint Mortgage
100 Wood Hollow Drive
Novato, CA 94945
Attn: Loan Delivery

CIS ABSTRACT
1019 Pt. Salonga Rd.
Suite 103
Northport, NY 11768
1 888 TITLENNY

06 09132Q

# EXHIBIT D
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through*
*Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100*
*Civil Action No.*

**Document Prepared by:**
Joan Commander

**After Recording please return to:**

Special Assets Department
Lehman Brothers SBF
25510 Commercentre Drive, Ste 100
Lake Forest, CA 92630

GPM# 0203119862

_____[Space Above This Line For Recording Data]_____
## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage, GreenPoint Mortgage
Funding, Inc.
(herein "Assignor"), whose address is 100 Wood Hollow Drive, Novato, CA 94945
Does hereby grant, sell, assign, transfer and convey, unto

Lehman Brothers Bank, FSB

(herein "Assignee")

Whose address is

25510 Commercentre Drive, Suite 100, Lake Forest, CA 92630

All beneficial interest under a certain Mortgage dated 11/16/2006, made

and executed by: Dr. Kenneth Crutch

To and in favor of GreenPoint Mortgage Funding, Inc.

upon the following described property situated in Queens County, State of New York.
As more particularly described in Exhibit A attached hereto and made a
Part hereof.
Section: _Queens_____ Block: _12620_____ Lot: __9_____

Such Mortgage having been given to secure payment of
U.S. $600,000.00

which Mortgage is of record in Book, Volume, or Liber No ___n/a_____ at Page
___n/a_____ (or as Instrument No. 2006000696580 on 12/20/2006, in the office of
the Recorder of Queens County, State of New York, together with the note(s) and
obligations therein described, the money due and to become due thereon with interest,
and all rights accrued or to accrue under such Mortgage.

1

This assignment is not subject to the requirements of Section 275 of the real property law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on January 18, 2007

Assignor:
GreenPoint Mortgage Funding, Inc.

Eric J. Armstrong
Assistant Vice President

State of California
County of Sonoma

On January 18, 2007, before me, Jocelyn Bigall, Notary Public, personally appeared Eric J. Armstrong. Personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which their6r person(s) acted, executed the instrument.

Witness my hand and official seal.

_(Seal)_

Jocelyn Bigall, Notary Public
My Commission Expires: February 3, 2008

OFFICIAL SEAL.- 1467914
JOCELYN BIGALL
NOTARY PUBLIC - CALIF.
COUNTY OF SONOMA
My Comm. Exp. Feb 3, 2008

NCR-1

2

## SCHEDULE A

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as "Map of 335 lots belonging to St. Albans Improvement Co., situated in the 4th Ward of the Borough of Queens, N.Y.C., surveyed by Fred L. Bartlett C.E. & C.S., August 1905", and filed in the Queens County Clerk's (now Register's Office) on 2/7/06 as and by part of lots 1 and 2 in Block 3, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Linden Boulevard, as widened, with the westerly side of 200th Street;

RUNNING THENCE: southerly along the westerly side of 200th Street, 84.87 feet;

THENCE: westerly parallel with Linden Boulevard, 40 feet;

THENCE: northerly parallel with 200th Street, 84.87 feet to the southerly side of Linden Boulevard;

THENCE: easterly along the southerly side of Linden Boulevard, 40 feet to the point or place of BEGINNING.

EXHIBIT E
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100 Civil Action No.*

RECORDATION REQUESTED BY:

After Recording please return to:

Special Assets Department
Lehman Brothers SBF
25510 Commercentre Drive, Ste 100
Lake Forest, CA 92630

Loan # 0203119862

## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

Assignment made by **GREENPOINT MORTGAGE FUNDING, INC.**,

whose address is 100 Wood Hollow Drive, Novato, CA 94945 (hereinafter "Assignor"),

to and in favor of

Lehman Brothers Bank, FSB

whose address is

25510 Commercentre Drive, Suite 100, Lake Forest, CA 92630

(hereinafter "Assignee") effective as of January 18, 2007.


**WHEREAS**, Dr. Kenneth Crutch (hereinafter "Borrower") has borrowed the principal sum of $600,000.00 from the Assignor, as evidence by a certain Promissory Note and secured by a certain Mortgage dated 11/16/2006.

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and adequacy of which are hereby acknowledged:

1.    Assignor hereby assigns, sells, conveys and transfers to Assignee all of Assignor's right, title and interest in and to that certain Assignment of Leases and Rents dated 11/16/2006 by and between Borrower and Assignor, respecting those certain premises described on Exhibit "A" attached hereto and incorporated herein by this reference commonly known as 199-24 Linden Blvd, Jamaica, NY 11412.

Section: Queens, Block: 12620, Lot: 9

2.                    Assignee hereby assumes and agrees to make all payments which become due from, and to perform all covenants and conditions which are to be performed by, Assignor pursuant to the Assignment of Leases and Rents from and after the date hereof.

Said Assignment of Assignment of Leases and Rents was recorded as 2006000696581 on 12/20/2006.

1

3.        Assignor hereby (i) consents to the transactions described above, and (ii) releases Assignor from all of Assignor's obligations arising under the Assignment of Leases and Rents from and after the date hereof.

This assignment is not subject to the requirements of Section 275 of the real property law because it is an assignment within the secondary mortgage market.

**IN WITNESS WHEREOF,** the assignor has duly executed this assignment on the date first above written.

**GreenPoint Mortgage Funding, Inc.**

(seal)

**Eric J. Armstrong, Assistant Vice President**

State of California )
County of Sonoma ) ss.

On January 17, 2007, before me, Jocelyn Bigall, notary public, personally appeared Eric J. Armstrong, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Jocelyn Bigall, notary public
My Commission expires: February 3, 2008

OFFICIAL SEAL - 1467914
JOCELYN BIGALL
NOTARY PUBLIC - CALIF.
COUNTY OF SONOMA
My Comm. Exp. Feb 3, 2008
NCR-1

2

## SCHEDULE A

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as "Map of 335 lots belonging to St. Albans Improvement Co., situated in the 4th Ward of the Borough of Queens, N.Y.C., surveyed by Fred L. Bartlett C.E. & C.S., August 1905", and filed in the Queens County Clerk's (now Register's Office) on 2/7/06 as and by part of lots 1 and 2 in Block 3, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Linden Boulevard, as widened, with the westerly side of 200th Street;

RUNNING THENCE: southerly along the westerly side of 200th Street, 84.87 feet;

THENCE: westerly parallel with Linden Boulevard, 40 feet;

THENCE: northerly parallel with 200th Street, 84.87 feet to the southerly side of Linden Boulevard;

THENCE: easterly along the southerly side of Linden Boulevard, 40 feet to the point or place of BEGINNING.

EXHIBIT F
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100*
*Civil Action No.*

RECORDATION REQUESTED BY:

WHEN RECORDED MAIL TO:

Lehman Brothers Bank, FSB
Attn : Special Assets
25510 Commercentre Drive, Suite 100
Lake Forest, CA 92630
Loan# 0203119862

## ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

KNOW THAT **LEHMAN BROTHERS BANK, FSB**, (hereinafter "ASSIGNOR"), whose address is 25510 Commercentre Drive, Suite 100, Lake Forest, CA 92630, in consideration of $600,000.00 dollars, paid by U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1, whose address is 1 Federal Street, Third Floor, Boston, MA 02110, Assignee, hereby assigns unto the Assignee, a Mortgage dated 11/16/2006, made by Dr. Kenneth Crutch to Assignor in the principal sum of $600,000.00 and recorded on 12/20/2006 in 2006000696580, in the office of the Clerk of The City Register of the City of New York, NY, covering Queens, Block# 12620, Lot# 9, which premises encumbers that certain real property described on Exhibit "A" attached hereto and incorporated herein by this reference, also known as 199-24 Linden Blvd., Jamaica, NY.

TOGETHER with that bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest: TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever. The word "Assignor" or "Assignee" shall be construed as if it read "Assignors" or "Assignees" whenever the sense of this instrument so requires.

Further, this Assignment is made pursuant to Real Property Law §275(2)(c) and the Mortgage assigned hereunder continues to secure a bonafide debt in the principal sum of $600,000.00 as aforesaid.

This Assignment contains the entire understanding of the Assignor and Assignee with respect to the matters subject hereto. There are no representations, warranties, duties or obligations binding on either of them with respect to such matters except as stated herein.

**IN WITNESS WHEREOF**, the assignor has duly executed this assignment on <u>October 15, 2008</u>

**LEHMAN BROTHERS BANK, FSB**

By: _____

Name:   Jennifer Henninger

Its:    Special Assets Administrative Assistant

<u>State of California    </u> )
                )ss
<u>County of Orange    </u> )

On <u>October 24, 2008</u> before me, <u>Mariah Dobransky</u>, Notary Public, personally appeared <u>Jennifer Henninger</u> who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

> MARIAH DOBRANSKY
> Commission # 1680021
> Notary Public - California
> Orange County
> My Comm. Expires Aug 5, 2010

## SCHEDULE A

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as "Map of 335 lots belonging to St. Albans Improvement Co., situated in the 4th Ward of the Borough of Queens, N.Y.C., surveyed by Fred L. Bartlett C.E. & C.S., August 1905", and filed in the Queens County Clerk's (now Register's Office) on 2/7/06 as and by part of lots 1 and 2 in Block 3, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Linden Boulevard, as widened, with the westerly side of 200th Street;

RUNNING THENCE: southerly along the westerly side of 200th Street, 84.87 feet;

THENCE: westerly parallel with Linden Boulevard, 40 feet;

THENCE: northerly parallel with 200th Street, 84.87 feet to the southerly side of Linden Boulevard;

THENCE: easterly along the southerly side of Linden Boulevard, 40 feet to the point or place of BEGINNING.

EXHIBIT G
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100 Civil Action No.*

RECORDATION REQUESTED BY:

WHEN RECORDED MAIL TO:

Lehman Brothers Bank, FSB
Attn : Special Assets
25510 Commercentre Drive, Suite 100
Lake Forest, CA 92630
Loan# 0203119862

## ASSIGNMENT OF ASSIGNMENT OF LEASES & RENTS

Assignment made by **LEHMAN BROTHERS BANK, FSB,** whose address is 25510 Commercentre, Suite 100, Lake Forest, CA 92630 (hereinafter "Assignor"), to and in favor of U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1, whose address is 1 Federal Street, Third Floor, Boston, MA 02110, (hereinafter "Assignee") effective as of the 30th day of March, 2007.

**WHEREAS,** Dr. Kenneth Crutch (hereinafter "Borrower") has borrowed the principal sum of $600,000.00 from Greenpoint Mortgage Funding, Inc., as evidence by a certain promissory note and secured by a certain mortgage dated 11/16/2006.

**FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and adequacy of which are hereby acknowledged:

1.    Assignor hereby assigns, sells, conveys and transfers to Assignee all of Assignor's right, title and interest in and to that certain Assignment of Leases and Rents (hereinafter "Assignment of Rents") dated 11/16/2006 by and between Borrower and Greenpoint Mortgage Funding, Inc., recorded on 12/20/2006 as File No. 2006000696581, in the City Register of the City of New York, NY, respecting those certain premises described on Exhibit "A" attached hereto and incorporated herein by this reference commonly known as 199-24 Linden, Blvd., Jamaica, NY.

2.    Assignee hereby assumes and agrees to make all payments which become due from, and to perform all covenants and conditions which are to be performed by, Assignor pursuant to the Assignment of Rents from and after the date hereof.

3.     Assignor hereby (i) consents to the transactions described above, and (ii) releases Assignor from all of Assignor's obligations arising under the Assignment of Rents from and after the date hereof.

**IN WITNESS WHEREOF,** the assignor has duly executed this assignment on the date first written below.

**LEHMAN BROTHERS BANK, FSB**

By: _____

Name:   Jennifer Henninger

Its:      Special Assets Administrative Assistant

Date:    October 15, 2008

State of California     )
                                )ss
County of Orange      )

On October 24, 2008 before me, Mariah Dobransky, Notary Public, personally appeared _____ Jennifer Henninger _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature_____

MARIAH DOBRANSKY
Commission # 1680021
Notary Public - California
Orange County
My Comm. Expires Aug 5, 2010

## SCHEDULE A

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as "Map of 335 lots belonging to St. Albans Improvement Co., situated in the 4th Ward of the Borough of Queens, N.Y.C., surveyed by Fred L. Bartlett C.E. & C.S., August 1905", and filed in the Queens County Clerk's (now Register's Office) on 2/7/06 as and by part of lots 1 and 2 in Block 3, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Linden Boulevard, as widened, with the westerly side of 200th Street;

RUNNING THENCE: southerly along the westerly side of 200th Street, 84.87 feet;

THENCE: westerly parallel with Linden Boulevard, 40 feet;

THENCE: northerly parallel with 200th Street, 84.87 feet to the southerly side of Linden Boulevard;

THENCE: easterly along the southerly side of Linden Boulevard, 40 feet to the point or place of BEGINNING.

EXHIBIT H
*(Complaint)*

*U.S. Bank National Association, as Trustee of the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-1 v. Dr. Kenneth Crutch, The City of New York Parking Violation Bureau and John Does Nos. 1-100 Civil Action No.*

# LEHMAN BROTHERS

September 11, 2008

## DEFAULT DEMAND

Dr. Kenneth Crutch
3309 Harbor Point Road
Baldwin, NY 11510

CERTIFIED MAIL
7007 0220 0001 8338 4458
First Class Mail

| | |
|---|---|
| <u>Name:</u> | Dr. Kenneth Crutch |
| <u>Number:</u> | 0203119862 |
| <u>Property:</u> | 199-24 Linden Blvd<br>Jamaica, NY 11412 |

Dear Dr. Crutch,

The promissory note dated **Nov 16, 2006** in the original amount of **$600,000.00** is in Default due to non-payment of monthly installments of **$5,282.41** including principal, interest and escrow, which became due on **8/1/2008** and on the first day of each subsequent month.

Because of this uncured breach in the terms and conditions of said Note, we do hereby declare the entire balance of indebtedness to be due and owing.

| | | |
|---|---|---:|
| Principal | $ | 591,165.01 |
| Estimate Interest* from 6/30/2008 to 9/21/2008 | $ | 10,216.31 |
| Prepayment Penalty | $ | 23,646.60 |
| Late Charges | $ | 214.92 |
| Misc Charges | $ | - |
| Other | $ | - |
| Escrow Account Shortage | $ | 2,383.91 |
| **TOTAL** | **$** | **627,841.68** |
| | | |
| * *Accrued Interest / Day:* | *$* | *127.59* |

Demand is hereby made upon you under terms of said Note for payment of the entire balance due. If payment of this demand is not made on or before 9/21/2008 , we shall take legal and other actions deemed necessary or appropriate to protect our interest, i.e., foreclose and liquidation of collateral.

To cure this default, a payment of $ 15,443.98 must be received on or befo 9/21/2008
**CASHIERS CHECK ONLY!** No partial payments will be accepted.

Please call the undersigned with your questions or comments at: 949.614-4885

Sincerely,

Graciela Burrola
Special Assets Officer

LEHMAN BROTHERS BANK, FSB
23920 Commercentre Drive
Lake Forest, CA 92630
TEL (800)370-6357 FAX (949)614-4652


Member FDIC



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. Kenneth Church
3309 Harbor Pt. Rd
Baldwin, NY 11510

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                            ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7007 0220 0001 8336 4458

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**O F F I C I A L   U S E**

Postage  $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees  $

Postmark
Here

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

7007 0220 0001 8336 4458